406 S.E.2d 749

STATE of West Virginia ex rel. WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES as subrogee of Jeaneace L. Stump, Plaintiff Below, Petitioner,

v.

Honorable Danny O. CLINE, Judge of the Circuit Court of Webster County, and Delmas Simmons, Defendant Below, Respondent.

No. 20030.

Supreme Court of Appeals of West Virginia.

Submitted March 13, 1991.

Decided June 28, 1991.

William W. Talbott, Talbott & Alsop, L.C., Webster Springs, for Delmas D. Simmons.

Asa Holcomb, for West Virginia Dept. of Health and Human Resources.

Robert Reed Sowa, Sutton, Child Advocate on behalf of Oliver Stump.

PER CURIAM:

The West Virginia Department of Health and Human Resources, as subrogee of Jeaneace L. Stump, seeks a writ of prohibition to prevent the execution of a final order of the Circuit Court of Webster County entered on February 8, 1991. The petitioner contends that the lower court erred by ordering the DNA fingerprinting blood testing of Jeaneace L. Stump, her son Oliver J. Stump, and the putative father, Delmas D. Simmons. We agree with the contentions of the petitioner and grant the writ of prohibition.

I.

Oliver J. Stump was born on February 27, 1981, to Jeaneace L. Stump. The mother and child have received Aid to Families With Dependent Children assistance from the petitioner since March 1981 and, pursuant to W.Va.Code § 9–3–4 (1979), have subrogated to the appellant "all rights, title and interest such recipient may have to the receipt of support and maintenance moneys from any person responsible for the support and maintenance of any member of the benefit group." Pursuant to a bastardy suit brought by Ms. Stump against Mr. Simmons, adjudication of the issue of paternity was conducted in May 1983. Prior to trial, Mr. Simmons requested blood tests, and the Circuit Court of Webster County, the Honorable A.L. Sommerville, Jr., presiding, issued an order on April 26, 1982, compelling the parties to submit to blood testing. Mr. Simmons contends that he made no effort to schedule the requested blood tests because no specific directions were set forth by the court in the order. Consequently, Mr. Simmons moved for a continuance in December 1982 on the basis that no blood tests had yet been conducted. In the state's answer to Mr. Simmons' motion for a continuance, the state indicated its understanding that the duty to schedule the blood testing was upon the party requesting the testing, Mr. Simmons. Although the court granted Mr. Simmons' motion for a continuance, no blood tests had been conducted by the trial date in May 1983. A jury trial was conducted, and Mr. Simmons was determined to be the father of the child. By final order dated January 30, 1984, the Circuit Court of Webster County, pursuant to the jury verdict, adjudged Mr. Simmons the father of the child and ordered him to pay seventy-five dollars monthly in child support.

On or about November 26, 1986, the Child Advocate Office of the petitioner instituted an income withholding procedure seeking to withhold seventy-five dollars in current child support and an additional ten percent of Mr. Simmons' disposable income to satisfy the arrearage of $1,317.38 which had accumulated from February 1984 through November 1986. By order dated February 2, 1987, the income withholding as requested by the Child Advocate Office

was implemented, and judgment was granted against Mr. Simmons in the amount of $1,317.38.

On August 28, 1989, the Child Advocate Office instituted a petition to modify the support order to increase the amount of child support to be paid by Mr. Simmons. In response, Mr. Simmons moved that the parties submit to DNA fingerprinting and blood testing regarding the issue of paternity. By recommended order reflecting a hearing of September 18, 1990, Family Law Master Jeffrey L. Hall recommended that Mr. Simmons' motion be granted. At a January 18, 1991, hearing regarding the Child Advocate's subsequent petition for review of the Family Law Master's recommended order, the Circuit Court of Webster County, by order entered February 8, 1991, denied the petition for review and ordered the parties to submit to DNA fingerprinting blood tests to determine the paternity of Oliver Stump.

## II.

We have recognized on numerous prior occasions that "[t]he doctrine of *res judicata* guards the finality of a court's decision." *Cook v. Cook*, 178 W.Va. 322, 324, 359 S.E.2d 342, 344 (1987). In syllabus point 1 of *In re McIntosh's Estate*, 144 W.Va. 583, 109 S.E.2d 153 (1959), we explained the doctrine of *res judicata* as follows:

'An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*' Point 1, Syllabus, *Sayre's Adm'r v. Harpold*, 33 W.Va. 553 [11 S.E. 16] [1890].

In *Nancy Darlene M. v. James Lee M., Jr.*, 184 W.Va. 447, 400 S.E.2d 882 (1990), we encountered a situation wherein a putative father attempted to challenge his paternity nearly five years after the birth of his putative daughter. Syllabus point 1 of *Nancy Darlene M.*, in pertinent part, provides that "[a]n adjudication of paternity, which is expressed in a divorce order, is *res judicata* as to the husband and wife in any subsequent proceeding." We further explained our reasoning:

If we were to recognize that the appellee could continue to raise the issue of paternity nearly five years after the birth of his putative daughter, then our domestic relations law would be replete with cases in which paternity is denied, and, consequently, child support payments, necessary for the daily needs of children's lives, would never be met.

184 W.Va. at 451, 400 S.E.2d at 886.

We concluded in *Nancy Darlene M.* that the issue of paternity had already been adjudicated and that the circuit court committed reversible error in allowing blood testing to be conducted. *Id.*, 184 W.Va. at 451, 400 S.E.2d at 886.

In *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 387 S.E.2d 866 (1989), we encountered the question of the admissibility of blood tests for the purpose of rebutting the presumption of legitimacy which arises when a child is conceived or born during a marriage. Although *Michael K.T.* differs from the present case in that the issue of *res judicata* was not dealt with in *Michael K.T.* and the parties in *Michael K.T.* had been married, our decision in that case is instructive on the issue of appropriate challenges to determinations of paternity. In holding that blood test evidence was admissible, under certain circumstances, to rebut the presumption of legitimacy, we also cautioned the lower courts that blood test evidence which would disprove paternity should be excluded "when the individual attempting to disestablish paternity has held himself out to be the father of the child for a sufficient period of time such that disproof of paternity would result in undeniable harm to the child." *Michael*

*K.T.*, 182 W.Va. at 404, 387 S.E.2d at 871. We further stated that "[w]e do not establish a finite period of time which must have passed before blood test evidence is inadmissible, because we recognize that the facts of each case must be examined to determine whether equity demands that paternity remain unchallenged." *Id.*, 182 W.Va. at 405, 387 S.E.2d at 872. "However, absent evidence of fraudulent conduct which prevented the putative father from questioning paternity, this Court will not sanction the disputation of paternity through blood test evidence if there has been more than a relatively brief passage of time." *Id.*

Our opinions in *Nancy Darlene M.* and *Michael K.T.* are based upon the underlying premise that the "best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T.*, 182 W.Va. at 405, 387 S.E.2d at 872 (citing *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601, 604 (1972)). In *Nancy Darlene M.*, we approved of the reasoning of the Court of Appeals of North Carolina in *Withrow v. Webb*, 53 N.C.App. 67, 280 S.E.2d 22 (1981). In that case, the North Carolina court explained the heightened necessity for finality in paternity issues as follows:

> Even if the principle of *res judicata* were not applicable, it would seem to us that to grant the motion for a blood-grouping test on this record, would open the door to unwarranted challenges of paternity, violate public policy, and clearly result in irreparable harm to the child whose parents appear to be bent on harassing one another.

*Id.* at 72, 280 S.E.2d at 26.

The adjudication of paternity in the present case occurred by jury trial in May 1983. While Mr. Simmons alleges that confusion among the parties regarding the responsibility for scheduling the tests prevented him from obtaining blood tests during that prior adjudication, Mr. Simmons failed to exercise his right to challenge that May 1983 decision through the appellate process. Furthermore, the question of paternity was not raised when the child support order was enforced by income with-holding on November 26, 1986. It was not until the Child Advocate Office petitioned to modify the support order on August 28, 1990, over seven years after a jury determined that Mr. Simmons was the father of Oliver Stump, that Mr. Simmons raised the issue of paternity. We explained in *Michael K.T.* that we "will not sanction the disputation of paternity through blood test evidence if there has been more than a relatively brief passage of time." *Michael K.T.*, 182 W.Va. at 405, 387 S.E.2d at 872. This untimely attempt by Mr. Simmons to challenge the paternity issue, as adjudicated in May 1983, is defeated by the doctrine of *res judicata* as well as by sound public policy.

Accordingly, we hold that the paternity of Oliver Stump was conclusively established by a jury trial in May 1983, and the circuit court should be restrained from enforcing its order requiring blood testing. We consequently grant the writ of prohibition requested by the petitioner.

Writ granted.