459 S.E.2d 363

**STATE of West Virginia, ex rel. DAVID ALLEN B., Petitioner,**

v.

**The Honorable A.L. SOMMERVILLE, Jr., Judge of the Circuit Court of Webster County; West Virginia Department of Human Services; David Lloyd K.; and Edzel and Shirley K., Respondents.**

No. 22874.

Supreme Court of Appeals of West Virginia.

Submitted May 30, 1995.

Decided June 15, 1995.

Michael C. Farber, Sutton, for Edzel and Shirley K.

RECHT, Justice:

David Allen B. seeks a Writ of Prohibition to prevent the Circuit Court of Webster County from enforcing a portion of its final order requiring DNA fingerprinting blood testing to determine whether David Allen B. is the biological father of David Lloyd K.[1]

The factual pattern in the case *sub judice* presents another dimension to the use of blood test evidence to disestablish paternity. *Cf. Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 387 S.E.2d 866 (1989), where we addressed the issue of the admissibility of blood test evidence to disprove paternity where the individual attempting to disestablish paternity was attempting to deny paternity. Here we are asked to consider the use of blood test evidence to disprove paternity basically at the request of the maternal grandparents over the objection of David Allen B. who initiated the proceeding in the circuit court to establish paternity.

I

Commencing in the summer of 1985, David Allen B. and Yvonna Lynn K. began living together, an arrangement which continued uninterrupted until Yvonna's death on September 26, 1993. During the period of cohabitation, and on September 6, 1986, Yvonna Lynn K. gave birth to David Lloyd K., whose paternity was the seminal event in the proceeding which evolved into the writ of prohibition currently before this Court.

Following the death of Yvonna Lynn K., David Allen B. filed a Petition to Declare Legitimacy of an Infant Child and to Establish Paternity Rights, in the Circuit Court of Webster County. Named as parties to this petition were the infant David Lloyd K., and as well Shirley K. and Edzel K., the maternal

Howard J. Blyler, Cowen, for petitioner David Allen B.

Robert Reed Sowa, Sutton, for Dept. of Human Services.

Joyce Helmick Morton, Webster Springs, guardian ad litem, for David Lloyd K.

[1] The merits of this case involve issues relating to paternity and legitimacy of an infant. Accordingly, we continue our prior practice of protecting the identity of the individuals by not using last names in order to avoid stigmatizing the parties. *See, e.g., Mildred L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436 (1994); *West Virginia*

grandparents of David Lloyd K.[2] The purpose of naming the maternal grandparents as parties to the petition seeking to establish paternity was so that visitation rights could be established in Shirley K. and Edzel K.[3]

A guardian ad litem was appointed to represent the interests of David Lloyd K. A hearing with all parties present occurred over two separate days during which time testimony was presented and documentary evidence was admitted on all issues including the paternity of David Lloyd K.; the fitness of David Allen B. and the visitation rights of the maternal grandparents. During the hearing, the circuit court, without objection of any of the adult parties, and out of the presence of any of the parties including the guardian ad litem, conducted a personal interview with David Lloyd K. As a result of this interview, the trial court found that "David Lloyd K. [was] . . . bright and cooperative, and that he had expressed a desire to live with his 'dad'."

Also during the course of the hearing, the circuit court took judicial notice of a related proceeding filed before a family law master in Webster County in 1988. This related matter was initiated by the West Virginia Department of Human Services and was designed to establish that David Allen B. was the father of David Lloyd K. and accordingly should be required to pay child support.[4]

The significance of the action filed by the West Virginia Department of Human Services in the matter under consideration is that as part of the pleadings in that proceeding, David Allen B. filed a verified acknowl-

edgment dated February 13, 1987 that he was the father of David Lloyd K.

Finally, the circuit court found that during her lifetime, Yvonna Lynn K., by an acknowledgment dated November 17, 1986, stated under oath that David Allen B. was the father of David Lloyd K.

As a result of all the testimony and documentary evidence introduced during the hearings upon the petition to establish paternity filed by David Allen B., the trial court found and concluded that David Allen B. made a *prima facie* case that he was the father of David Lloyd K.; that David Allen B. was not an unfit person to have the custody of David Lloyd K.; and that the maternal grandparents were entitled, as a matter of law, to exercise visitation rights with David Lloyd K.

Despite these findings and conclusions, the trial court further ordered that DNA blood testing be conducted so as to determine "whether or not the petitioner [David Allen B.] is in fact the biological father of David Lloyd K." It is that portion of the final order relating to the DNA testing that meets with resistance of David Allen B. and it is the requirement that DNA blood testing be conducted that is sought to be prohibited by this Court.

## II

The petitioner contends that since *W.Va.Code* 48A–6–6(b) (1990)[5] establishes a procedure by which both a man and woman can by written acknowledgment establish the man as the father of a child for all purposes, then further blood testing is superfluous to

*Department of Human Services v. La Rea Ann C.L.,* 175 W.Va. 330, 332 S.E.2d 632 (1985).

**2.** There is no dispute in this proceeding that Yvonna Lynn K. was the biological mother of David Lloyd K.

**3.** It is unclear as to what specific statute compels the presence of the maternal grandparents as involuntary parties to this proceeding since the grandparents' right of visitation were not adjunct to a divorce. *See W.Va.Code* 48–2B–2(b) (1992). It is presumed that David Allen B. joined the maternal grandparents out of an abundance of caution since the maternal grandparents possess the right to petition the circuit court for an order

granting reasonable visitation rights with David Lloyd K. upon the death of their daughter, Yvonna Lynn K. *See W.Va.Code* 48–2B–4(a) (1992).

**4.** The record is unclear whether there was a final order in the 1988 proceeding; however, the trial court ordered that matter consolidated with the case *sub judice.*

**5.** *W.Va.Code* 48A–6–6(b) (1990) provides:

A written acknowledgment by both the man and woman that the man is the father of the named child legally establishes the man as the father of the child for all purposes and child support can be established under the provisions of this chapter.

the point that to require that DNA tests be conducted in the presence of a written acknowledgment of paternity exceeds a circuit court's jurisdiction. Under the facts presented in this case, we agree and grant the Writ thereby preventing the circuit court from enforcing its order requiring any DNA fingerprinting blood testing of David Allen B. and David Lloyd K.[6]

As we previously discussed, this case presents the converse of the factual pattern that we considered in *Michael K.T. v. Tina L.T., supra.* The use of the blood testing is now being required to disprove paternity of an individual who not only doesn't deny paternity, but sought to proclaim the legitimacy of his son to the entire world when he filed the Petition to Declare Legitimacy of an Infant Child and to Establish Paternity Rights.

██ Ironically, under the holding of *Michael K.T. v. Tina L.T., supra,* David Allen B. probably would not be permitted to use any type of blood testing to disestablish paternity, if indeed he was attempting to deny paternity. Therefore, why should he be required to submit to blood testing when its sole purpose would be to deny a child's legitimacy, when paternity is not denied? As we said in Syl. pt. 3, *Michael K.T. v. Tina L.T., supra:*

> A trial judge should refuse to admit blood test evidence which would disprove paternity when the individual attempting to disestablish paternity has held himself out to be the father of the child for a sufficient period of time such that disproof of paternity would result in undeniable harm to the child.

Since the blood testing of David Allen B. and David Lloyd K. would only result in undeniable harm to the child, nothing further should be done on the issue of paternity beyond a simple recognition based upon the findings and conclusions of the circuit court that

David Allen B. is the father of David Lloyd K.

██ Accordingly, we hold that under the facts and circumstances of this case that, once a man and woman properly acknowledge that the man is the father of a child under *W.Va.Code* 48A–6–6(b) (1990), then absent a challenge to that acknowledgment by a person with standing to challenge the acknowledgment, no blood testing shall be required to disestablish paternity.

We recently had occasion to examine the implication of *W.Va.Code* 48A–6–6(b) (1990) in a slightly different context. *See, Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). In *Chrystal R.M. v. Charlie A.L., supra,* we examined *Code* 48A–6–6(b) (1990) as it relates to an acknowledgment embraced within an adoption agreement whereby a man was named as the natural father of the child sought to be adopted by the man's parents. The adoption was never consummated.

The scope of the appeal in *Chrystal R.M. v. Charlie A.L.* required this Court to analyze the language of the adoption agreement by measuring that language against the provision of *W.Va.Code* 48A–6–6(b) (1990) all within the context of a paternity action instituted by the natural mother against someone other than the man acknowledged to be the natural father in the adoption agreement. We held that statements by the natural mother in an adoption agreement that the adoptive father acknowledges paternity does not constitute acknowledgment of the parties under *W.Va.Code* 48A–6–6(b) (1990) when the adoption agreement is not consummated. We then concluded that the lower court was empowered to order a blood test to assist in determining the paternity issue.

██ However, when the facts in *Chrystal R.M. v. Charlie A.L., supra,* are compared and contrasted with the case under consideration, we recognize that in *Chrystal R.M. v.*

---

6. The maternal grandparents raise the issue as to whether this original proceeding in prohibition was timely in that it was not filed within the 60–day period contained in the circuit court's order. This is an original proceeding in prohibition which raises issues that conform to our traditional rule in prohibition testing whether a trial court

has exceeded its legitimate powers. *See State ex rel. Arnold v. Egnor,* 166 W.Va. 411, 275 S.E.2d 15 (1981). So long as the act sought to be prohibited has not occurred, the relief sought in this case will not be considered to be time barred.

*Charlie A.L., supra,* the person challenging the prior acknowledgment of paternity was a biological parent, to-wit, the natural mother.[7] In the case *sub judice* the only persons challenging the effect of the prior acknowledgments are the maternal grandparents. We hold that while an alleged biological parent has standing to challenge the paternity established pursuant to *W.Va.Code* 48A–6–6(b) (1990), that same right is not vested in a grandparent of the child.[8]

■ The rights of grandparents relating to grandchildren have been expanding over the past twenty years, however, those rights are limited in the main to rights of visitation. *See W.Va.Code* 48–2B–1 (1994) *et seq.;* Elaine D. Ingulli, "Grandparent Visitation Rights: Social Policies and Legal Rights," 87 *W.Va.L.Rev.* 295 (1984–85). However, no authority is found that equates a grandparent's right of visitation to the ability to challenge the paternity and legitimacy of a grandchild.

### III

■ Finally, we recognize that during oral argument the maternal grandparents raised serious questions as to the fitness of David Allen B. alleging a number of prior acts of domestic and child abuse. Establishing David Allen B. as the natural father of David Lloyd K. does not resolve the issue of parental fitness as raised by these allegations. Unfortunately, there is no record below which would allow this Court to examine the reasoning behind the circuit court's ruling that David Allen B. is "not unfit." In any event, as we have stated so often in the past, the standard to shape any opinion in child custody matters is that the "best interest of the child is the polar star by which decisions must be made which affect children." *See State ex rel. Cash v. Lively,* 155 W.Va. 801, 187 S.E.2d 601, 604 (1972). Accordingly, notwithstanding our recognition of David Allen

B.'s paternity of David Lloyd K. without the necessity of further blood testing, we remand this matter to the circuit court with specific instructions to resolve the fitness issue consistent with a determination of the best interest of David Lloyd K.

Writ granted.

BROTHERTON, Justice, did not participate.

FOX, Judge, sitting by temporary assignment.

---

**7.** A biological parent has a constitutional right not to be deprived of a parental right without notice and some appropriate due process hearing. *See In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973).

**8.** Nothing in the record suggests that the prior acknowledgments resulted from collusion between the biological mother (Yvonna Lynn K.) and another man (David Allen B.) who is not the

biological father, but who attempted to rely upon the paternity acknowledgments under *W.Va.Code* 48A–6–6(b) (1990), so as to bar the rights of the actual biological father. Accordingly, we need not be concerned with endowing a nonbiological father with any preferential standing. *See Simmons v. Comer,* 190 W.Va. 350, 438 S.E.2d 530 (1993).