687 S.E.2d 583

**Jason L. GALLOWAY**

v.

**Tiffany D. GALLOWAY.**

No. 34588.

Supreme Court of Appeals of West Virginia.

Dec. 30, 2009.

For Majority Opinion, see 224 W.Va. 272, 685 S.E.2d 245.

BENJAMIN, Chief Justice, concurring:

I concur with the majority's result and opinion on the specific facts of this appeal. I choose to elaborate in this separate opinion on the issue of child support.

In this case, we consider a parent's responsibility to a child where, after the parenting relationship has been established and the parent and child have bonded, it is determined that the child is not the biological child of the parent. At issue is whether the legal right of the child to parental support under West Virginia law should be established by the existing parenting relationship the father has with the child or whether the lack of a genetic relationship between the father and child should extinguish any such right of the child.

We concern ourselves here with the child's interests and welfare. The failure of any relationship may result in a host of competing interests. While there may be profound emotions between the adults, and while equities may weigh heavier to one adult versus the other, support issues related to children necessarily should be separate and distinct.

It is the right of the child to receive the financial support of his or her parents. This truism is fundamental to our legal system in West Virginia. As this Court has frequently recognized, and as the majority clearly states, the best interest of the child is the polar star by which all matters affecting children must be guided. In 1993, we set forth the child's rights regarding establishment of his or her paternity. In Syllabus Point 3 of *Cleo A.E. v. Rickie Gene E.*, 190 W.Va. 543, 438 S.E.2d 886 (1993), we stated, "A child has a right to an establishment of paternity and a child support obligation, and a right to independent representation on matters affecting his or her substantial rights and interests." [1]

Lives can be messy—and this is especially true when relationships fail. A deep overlay of intense emotions between adults in a failed relationship, particularly where children are involved or where there is a sense of dishon-

---

1. Complimenting parental obligations are a host of parental rights. Just as a parent has a duty to support his or her child, a parent is also entitled to the companionship of the child, the right to love, comfort and raise the child.

esty or abandonment, may sometimes overwhelm the legal consideration of child support issues in family law settings. From these emotions, the litigants come to court with their own heartfelt subjective beliefs of what each believes to be fair and, consequently, just. It may be accepted that a father may feel an intense sense of emotional betrayal should he find out that he is not the biological father of a child he believed himself to be. He may even wonder why he should be expected to act in a responsible manner when his partner was deceptive. However, when it comes to the right to support of a child where parental responsibilities have been assumed, the needs of the innocent child should not fall prey to the intensity of the emotional upheaval between the adults. Such a deep emotional wound should not be extended outside the adults' relationship to be visited on the child. Fatherhood is more than genetics. It is precisely in such emotional legal battles that the rule of law must stand resolute—a measure of stability and predictability. In this case, the parental duty of support should not nullified.

As technology develops, it is clear that those who seek a paternity test can find one readily available. Paternity testing is now much less expensive than in the past. Billboards herald quick, easy and affordable paternity determinations. Syndicated televisions shows devote entire hours to whether someone is or is not a child's father. Drug and convenience stores offer in-home paternity testing. The days of needing the state's blessing and assistance to contest paternity are quickly passing. This ease of testing has led some to advance the concept that a negative DNA test result should, itself, be sufficient to nullify a child's right to support from the child's only known father. Such an argument is absurdly simplistic. In this case, for example, DNA is one of many factors to be considered as we weigh the rights and obligations of child support. In the balance of interests, we must always be sensitive to the physical, financial and emotional well-being of the children involved.

In *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 387 S.E.2d 866 (1989), we established a procedure through which paternity results disproving paternity are to be admitted into evidence. This case remains the guide by which attempts to disprove paternity by an adjudicated father must be handled.

Our decision herein is one which, I believe, correctly sets forth the legal right of a child to support from one who was—and still is—a legal parent. It does not seek to reconcile the broader policy issues of the rights and responsibilities between adults in such paternity cases; nor does it seek to sanction misrepresentation or betrayal in an adult relationship. Those are matters for the Legislature to consider from a policy standpoint— as has been done in some other states.[2] At some point, it may be appropriate for the Legislature to provide statutory guidance for the individual adjudicated to be the father of a child who later becomes aware from some type of testing that he is not the biological parent.

---

**2.** See, for example, Padgett, *"The Plight of a Putative Father: Public Policy v. Paternity Fraud,"* 107 WVLR 867, 899–900 (Spring 2005).