603 S.E.2d 177

**STATE of West Virginia ex rel. Clyde H. RICHEY, Petitioner,**

v.

**Colonel Howard E. HILL, Jr., and Mike Clifford, Prosecuting Attorney for Kanawha County, Respondents.**

**No. 31676.**

Supreme Court of Appeals of West Virginia.

Submitted March 30, 2004.

Decided May 27, 2004.

Concurring Opinion of Chief Justice Maynard July 6, 2004.

See also 171 W.Va. 342, 298 S.E.2d 879.

158

Jacques R. Williams, Hamstead, Williams & Shook, P.L.L.C., Morgantown, for the Petitioner.

Kelly D. Ambrose, Assistant Attorney General, Chief Legal Counsel, South Charleston, for Respondent Hill.

Mike Clifford, Prosecuting Attorney, Mary Beth Kershner, Assistant Prosecuting Attorney, Robert William Schulenberg, III, Assistant Prosecuting Attorney, Charleston, for Respondent Clifford.

DAVIS, J.

Clyde H. Richey (hereinafter "Mr. Richey") seeks an original jurisdiction writ of mandamus directing Colonel Howard E. Hill, Jr., Superintendent of the West Virginia State Police, and Mike Clifford, Prosecuting Attorney for Kanawha County, West Virginia (hereinafter "Colonel Hill" or "Mr. Clifford"), to either conduct DNA tests on certain evidence used in Mr. Richey's 1979 trial for third-degree sexual assault or to release such evidence so that he can arrange his own testing. Having reviewed the petition and supporting memorandum, Colonel Hill's and Mr. Clifford's responses and exhibits, and pertinent records, we find mandamus does not lie and therefore deny the petition.

## I.

### FACTUAL AND PROCEDURAL HISTORY

A jury convicted Mr. Richey in 1979 on one count of third-degree sexual assault for having had anal intercourse with a fourteen year-old boy in a motel in Charleston, West Virginia. At the time of the assault, Mr. Richey was in the House of Delegates. His victim was a legislative page whom Mr. Richey knew through the Big Brothers program. Mr. Richey arranged for the victim to accompany him from Morgantown and to stay with

him for several days in a motel room Mr. Richey was renting during the legislative session. After conviction, Mr. Richey was not incarcerated but instead received five years probation. We affirmed the conviction in *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982).

At trial, the State introduced three-pairs of the victim's underwear.[1] State Police Serologist Fred Zain subjected one pair of the underwear to an unauthorized acid phosphate test (a test which determines if semen is present), but apparently obtained no test results. State Police Serologist Robert Murphy performed other testing on all three pairs of the underwear, which found semen on two of them. However, there was insufficient semen to determine the blood type of the semen.[2]

After conviction, Mr. Richey filed a number of habeas petitions culminating in a habeas proceeding held before Judge A. Andrew MacQueen of the Circuit Court of Kanawha County.[3] This proceeding included a claim under *In re West Virginia State Police Crime Laboratory*, 190 W.Va. 321, 438 S.E.2d 501 (1993) (hereinafter *"Zain I"*).[4] Judge

MacQueen dismissed the *Zain I* claim on April 23, 1996, and the remaining claims on December 2, 1996. We refused a petition for appeal.

After we refused Mr. Richey's habeas appeal, he filed a *coram nobis* petition, a W. Va. R. Civ. P. Rule 60(b) motion, and a petition for DNA testing[5] in the Circuit Court of Kanawha County, Judge George M. Scott, sitting by temporary assignment. Judge Scott denied relief in 1998 finding "the claims of the petitioner ... are ... barred by the doctrine of *res judicata*." Mr. Richey never petitioned for an appeal from Judge Scott's final order.

In 2002, Mr. Richey filed with the Circuit Court of Kanawha County, Judge Louis H. Bloom, a motion for DNA testing that Judge Bloom found was "nearly identical" to the one Mr. Richey filed before Judge Scott.[6] While this motion was pending, Mr. Richey filed an original jurisdiction habeas corpus petition in this Court seeking DNA testing, which we refused. On November 26, 2002, Judge Bloom denied the motion for DNA testing finding that it was nearly identical to

1. At trial, Robert Hutton, a staff physician in the Emergency Room of the West Virginia University Hospital, testified he examined the victim a day or two after the assault. Dr. Hutton ordered three standard tests, which included a cytological examination—a test to look for spermatozoa in the victim's rectum. Because Dr. Hutton did not personally perform the cytological test and was not present when the test was done, the circuit court precluded him from testifying concerning any test results. The physician to whom the cytological specimens were sent for testing was a Dr. Boyd, who did not testify at Mr. Richey's trial.

2. It appears that Murphy testified in a 1995 habeas hearing that Zain's unauthorized preliminary acid phosphate test could have possibly interfered with Murphy's results. At the trial, Zain denied having conducted any testing and did not venture any opinion that the semen on the underwear could be connected with Mr. Richey. Importantly, Murphy's findings that there was insufficient semen to match to a blood type were the same for the two pairs underwear upon which he (Murphy) detected semen tested—the one pair that Zain tested as well as one Zain did not test.

3. Mr. Richey recognized that a habeas may not have been the appropriate procedural vehicle with which to proceed since he was not incarcerated. He apparently moved to convert the habe-

as to a writ of *coram nobis*, but the circuit court never ruled on this motion. *See infra* note 10.

4. *Zain I* was an extraordinary proceeding arising from Fred Zain's misconduct while a serologist at the State Police Crime Laboratory. *Zain I* documented Zain's long history of falsifying evidence to obtain criminal convictions. As a result, we provided for habeas corpus review of all convictions in which Zain performed serological testing and/or testified. *State ex rel. McLaurin v. Trent*, 203 W.Va. 67, 70 n. 2, 506 S.E.2d 322, 325 n. 2 (1998) (per curiam). In syllabus point 3 of *In re West Virginia State Police Crime Laboratory, Serology Division*, 191 W.Va. 224, 445 S.E.2d 165 (1994), we refused to extend *Zain I* to employees of the State Police Laboratory other than Zain.

5. For a discussion of forensic DNA testing, see Louis J. Palmer, Jr., *Encyclopedia of DNA and the United States Criminal Justice System* 106–111 (2004).

6. Mr. Richey filed his motion in front of Judge Bloom under Civil Action No. 93–W–52, the same number as his unsuccessful *Zain I* habeas, which Judge MacQueen had denied almost six years earlier, and which petition for appeal we refused some five years earlier.

the *coram nobis* petition Judge Scott denied and was barred by Judge Scott's decision. Mr. Richey never petitioned for appeal. Mr. Richey now asks us to order Colonel Hill and Mr. Clifford to perform DNA testing or allow him to perform such testing.

## II.

## STANDARD FOR ISSUANCE OF WRIT OF MANDAMUS

We have explained that " ' "[m]andamus lies to require the discharge by a public officer of a nondiscretionary duty." Point 3 Syllabus, *State ex rel. Greenbrier County Airport Authority v. Hanna*, 151 W.Va. 479[, 153 S.E.2d 284 (1967)].' Syllabus point 1, *State ex rel. West Virginia Housing Development Fund v. Copenhaver*, 153 W.Va. 636, 171 S.E.2d 545 (1969)." Syl. pt. 1, *State ex rel. Williams v. Department of Mil. Aff.*, 212 W.Va. 407, 573 S.E.2d 1 (2002). "To invoke mandamus the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing relator seeks; and (3) the absence of another adequate remedy." Syl. pt. 2, *Myers v. Barte*, 167 W.Va. 194, 279 S.E.2d 406 (1981). As "the burden of proof as to all the elements necessary to obtain mandamus is upon the party seeking the relief[,]" 52 Am. Jur. 2d *Mandamus* § 3 at 271 (2000) (footnote omitted), a failure to meet any one of them is fatal. With these factors in mind, we turn to the parties' contentions.

## III.

## DISCUSSION

Mr. Richey claims that DNA testing will prove his innocence. He further asserts that he has a clear legal right to exculpatory evidence and that the Respondents have a corresponding duty to provide him such evidence. He also summarily claims that "without this Honorable Court's involvement he is not likely to ever obtain what he needs."

The Respondents counter that they are not the custodians of the evidence and do not know if the evidence Mr. Richey seeks still exists. They also respond that Mr. Richey does not have a clear legal right to a manda-

mus because he has previously sought the same relief he now seeks before this Court and was unsuccessful. Consequently, he is barred by *res judicata* from proceeding in this action. We find that Mr. Richey has not shouldered his "heavy" burden of showing a right to mandamus. 52 Am. Jur. 2d *Mandamus* § 3 at 272 (2000) (footnote omitted).

### A. DNA Testing Is Not a Clear Legal Right and a Mandamus Cannot Be Used to Create Such a Right.

"We have characterized the purpose of the writ [of mandamus] as the enforcement of an established right and the enforcement of a corresponding imperative duty created or imposed by law." *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 398, 540 S.E.2d 917, 922 (1999). Because mandamus enforces only an established right, "[p]etitioners in mandamus must have a clear legal right to the relief sought therein and such right cannot be established in the proceeding itself." Syl. pt. 1, *State ex rel. Kucera v. Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

Mr. Richey directs us to no authority mandating the State conduct, or allow to be conducted, DNA testing when the petitioner is not incarcerated. Rather, he directs us to *Zain I* where we required inmates seeking relief due to Fred Zain's involvement in their trials to consent to DNA testing. 190 W.Va. at 327, 438 S.E.2d at 507. Our concern in *Zain I* revolved around those who were still incarcerated and not those who had already been released or who had never been incarcerated. We specifically provided in *Zain I*, "we will direct the Clerk of this Court to prepare and cause to be distributed to the *Division of Corrections* an appropriate post-conviction habeas corpus form." *Id.* at 327, 438 S.E.2d at 507 (emphasis added). Our concern in *Zain I* for those still incarcerated flowed, at least in part, from the jurisdictional requirement that habeas lies only for one "convicted of a crime and incarcerated under sentence of imprisonment therefore[.]" W. Va.Code

§ 53–4A–1(a) (1967) (2000 Repl. Vol.).[7] Mr. Richey's memorandum of law recognizes that habeas is unavailable to him as he is not incarcerated. Thus, he seeks to extend *Zain I* to include those who are not, or as here, who have never been, incarcerated.[8] This, as we have shown above, we cannot do.[9]

### B. No Clear Legal Right Because of Res Judicata

 In their responses, both Colonel Hill and Mr. Clifford claim that Mr. Richey lacks a clear legal right to the relief he seeks because his claim is barred by *res judicata.* We have explained *res judicata* as follows:

7. Indeed, many other jurisdictions providing for post-conviction DNA testing require a petitioner be incarcerated, imprisoned, in custody, or serving a sentence before seeking testing. *See, e.g.,* Cal. Penal Code § 1405(a) (West 2004 Cum. Pocket Part) ("currently serving a term of imprisonment"); Me. Rev. Stat. Ann. tit. 15, § 2137 (West 2003) ("actual execution of a sentence of imprisonment"); Mich. Comp. Law § 770.16(1) (2003 Cum. Pocket Part) ("serving a prison sentence"); Mo. Rev. Stat. § 547.035(1) (2002) ("custody of department of corrections"); Mont. Code Ann. § 46–21–110(1) (2003) ("serving a term of incarceration"); N.J. Stat. Ann. § 2A:84A–32A(a)a (West 2003 Cum. Ann. Pocket Part) ("currently serving a term of imprisonment"); Ohio Rev. Code Ann. § 2953.72(C)(1)(b) & (c) (2003) (Anderson 2003 Repl. Vol.) (petitioner must be sentenced to a prison term and must have at least one year remaining to serve on the sentence); Okla. Stat. tit. 22, § 1371.1(A) (2003) ("presently incarcerated"); 42 Pa. Cons. Stat. § 9543.1(a)(1) (2003 Cum. Ann. Pocket Part) ("serving a term of imprisonment"); R.I. Gen. Laws § 10–9.1–11(c) (2003 Pocket Supp.) ("serving an actual term of imprisonment and incarceration"); Wash. Rev.Code § 10.73.170(1) (2004 Cum. Ann. Pocket Part) ("currently serving a term of imprisonment"). *Cf.* Ky.Rev.Stat. Ann. § 422.285 (Banks–Baldwin 2003 Cum. Supp.) (post-conviction DNA testing available to one sentenced to death). The United States Congress is considering legislation mandating DNA testing for federal prisoners. The Innocence Protection Act of 2003, contained in Title III of the Advancing Justice Through DNA Technology Act, S. 1700, 108th Cong. (2003) (hereinafter "the FIPA") authorizes such testing for those "under a sentence of imprisonment or death pursuant to a conviction for a Federal offense[.]" FIPA § 3600(a).

8. Mr. Richey's counsel admitted in his opening oral argument before this Court that he was seeking an extension of *Zain I,* but in rebuttal argument claimed that his position did not require an extension of *Zain I.* We find that Mr.

" ' "An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*" Point 1, Syllabus, *Sayre's Adm'r v.*

Richey's initial assessment is correct. *See also EF Oper. Corp. v. American Bldgs.,* 993 F.2d 1046, 1050 (3d Cir.1993) ("It goes without saying that one cannot casually cast aside representations, oral or written, in the course of litigation simply because it is convenient to do so, and under the circumstances here, a reviewing court may properly consider the representations made in the appellate brief to be binding as a form of judicial estoppel, and decline to address a new legal argument based on a later repudiation of those representations.").

9. While Mr. Richey correctly notes that he has a well-established right to the disclosure of exculpatory evidence, he makes no further argument to illuminate why this observation supports his claim to DNA testing. In *Bell v. State,* 90 S.W.3d 301 (Tex.Crim.App.2002) (En Banc) (citations omitted), the Texas Court of Criminal Appeals refused to reach this exact issue in a post-conviction proceeding for DNA testing finding that the petitioner's citation to a general constitutional doctrine was insufficient to perfect the issue. "It is not sufficient that appellant raise only a general constitutional doctrine in support of his request for relief. It is incumbent upon appellant to cite specific legal authority and to provide legal arguments based upon that authority. This is especially important where, as here, the relevant area of law is new or not well defined." *Id.* at 305 (citations omitted). Our general law is consistent with the *Bell* approach. *See State v. Sprague,* 214 W.Va. 471, 476 n. 4, 590 S.E.2d 664, 669 n. 4 (2003) (per curiam) ("The appellant's general accusation does not discuss this issue with any meaningful specificity or particularity or provide authority to support his contention that the trial court's ruling was erroneous or that the charges were not consistent with the laws of West Virginia. In the absence of such supporting arguments or authority, we deem this assignment of error to have been waived."). Consequently, we find Mr. Richey's exculpatory evidence claim waived and we do not address it.

*Harpold,* 33 W.Va. 553[, 11 S.E. 16] [(1890)].' Syl. Pt. 1, *In re McIntosh's Estate,* 144 W.Va. 583, 109 S.E.2d 153 (1959)." Syllabus point 1, *State ex rel. West Virginia Department of Health & Human Resources v. Cline,* 185 W.Va. 318, 406 S.E.2d 749 (1991) (per curiam).

Syl. pt. 1, *State ex rel. West Virginia Dep't of Health & Hum. Res. v. Cline,* 185 W.Va. 318, 406 S.E.2d 749 (1991) (per curiam). Additionally, we have observed that

> [o]ur prior cases have recognized that the principles undergirding *res judicata* serve "to advance several related policy goals— (1) to promote fairness by preventing vexatious litigation; (2) to conserve judicial resources; (3) to prevent inconsistent decisions; and (4) to promote finality by bringing litigation to an end."

*State v. Miller,* 194 W.Va. 3, 10 n. 8, 459 S.E.2d 114, 121 n. 8 (1995) (citations omitted).

 Mr. Richey responds, however, that *res judicata* should not be applied if it would be unjust. While we have been cognizant of the need to ensure that application of *res judicata* does not "plainly defeat the ends of Justice[,]" *Gentry v. Farruggia,* 132 W.Va. 809, 811, 53 S.E.2d 741, 742 (1949), such an exception must be based upon "extraordinary circumstances" and "courts should be loathe to exercise this power." *Sims v. State,* 771 N.E.2d 734, 738 n. 2 (Ind.Ct.App.2002). Accord *Arwood v. J.P. & Sons, Inc.,* 759 So.2d 848, 850 (La.Ct.App.2000) (interests of justice exception should be granted only in exceptional cases in order to not defeat the purposes of *res judicata*). In this case, we face a situation that even more than usual justifies application of *res judicata.*

 As one leading treatise notes, "a dismissal of a second action on the ground that it is precluded by a prior action is itself effective as res judicata, and a judgment on the merits that forecloses further litigation of the preclusion question in a third action." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4435 at 148 (2d ed. 2002) (footnote omitted). In short, a determination of *res judicata* is itself *res judicata.* If anything, the rule that a finding of *res judicata* is itself *res judicata* is of stronger force than a determination to apply *res judicata* in the first instance. "The principles of res judicata apply to preclude relitigation of the res judicata issue just as cogently as with any other issue, and perhaps even more cogently." 18 *Federal Practice & Procedure, supra* § 4404 at 65 (footnote omitted).

 Judge MacQueen denied Mr. Richey relief under *Zain I* in 1996. We subsequently refused Mr. Richey's petition for appeal by a 4–0 vote. Subsequently, Mr. Richey filed a petition for a writ of *coram nobis* and Rule 60(b) motion along with a motion for DNA testing. Judge Scott denied relief based on *res judicata* in 1998.[10] Mr. Richey did not petition for appeal.[11] In 2002, Judge Bloom denied Mr. Richey DNA testing based upon Judge Scott's *res judicata* dismissal. Again, Mr. Richey did not petition for appeal.

 In syllabus point 4 of *Blake v. Charleston Area Medical Center,* 201 W.Va. 469, 498 S.E.2d 41 (1997), we explained:

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata,* three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court

---

**10.** We have noted that even though *coram nobis* is abolished in purely civil cases, it may still be available in a post-conviction context when the petitioner is not incarcerated. *Kemp v. State,* 203 W.Va. 1, 2 n. 4, 506 S.E.2d 38, 39 n. 4 (1997) (per curiam); *State v. Eddie "Tosh" K.,* 194 W.Va. 354, 363 n. 10, 460 S.E.2d 489, 498 n. 10 (1995) (per curiam). *Coram nobis,* however, is of "limited scope" since it does not reach "prejudicial misconduct in the course of the trial, the misbehavior or partiality of jurors, and newly discovered evidence[.]" *United States v. Mayer,*

235 U.S. 55, 69, 35 S.Ct. 16, 20, 59 L.Ed. 129, 136 (1914) (dicta). Likewise, even assuming *coram nobis* reaches the issue of conviction based upon perjured testimony, relief does not l, · in circumstances, such as found here by Judge MacQueen, where the result of the trial was not affected by the false testimony. 24 C.J.S. *Criminal Law* § 1622 at 236 (1989).

**11.** Mr. Richey missed two hearings in the *coram nobis* proceeding before Judge Scott.

having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Here, *Blake* is met. Judge Bloom entered a final order finding that Judge Scott's final order barred Mr. Richey from pursuing a claim for DNA testing. This finding by a court of competent jurisdiction was a final adjudication on the merits of whether Mr. Richey could seek DNA testing. *See* 18A *Federal Practice and Procedure, supra,* § 4435 at 148 (footnote omitted) (dismissal on grounds of *res judicata* is "a judgment on the merits that forecloses further litigation of the preclusion question in a third action."). Moreover, Mr. Richey never appealed either order. *See Hustead on Behalf of Adkins v. Ashland Oil Inc.,* 197 W.Va. 55, 60, 475 S.E.2d 55, 60 (1996) ("The Appellant admittedly chose not to file a direct appeal from the circuit court's final order. That decision resulted in the judgment becoming final and subject to the principles of res judicata."). Further, both cases involved the same parties, Mr. Richey and the State of West Virginia (represented in both cases by the Kanawha County Prosecuting Attorney). Finally, the two cases were based on the same cause of action-post—conviction DNA testing relating to Mr. Richey's 1979 conviction. Thus, we are compelled to conclude that *res judica-*

*ta* precludes granting Mr. Richey the relief he seeks.[12]

### C. Failure to otherwise establish a right to DNA testing

We have never spoken as to the precise contours of post-conviction DNA testing. However, other states have done so by crafting statutes that control the availability of post-conviction DNA testing. Our research has revealed many of these statutes share certain common provisions. Thus, we believe that this case provides us an opportunity to encapsulate the requirements to award post-conviction DNA testing by looking to these statutes.[13]

 We begin by observing that a petitioner in a post-conviction proceeding bears the burden of pleading and subsequently proving his claims by a preponderance of the evidence. As we said in syllabus point 1 of *State ex rel. Scott v. Boles,* 150 W.Va. 453, 147 S.E.2d 486 (1966):

Under the statute of this state dealing with habeas corpus proceedings a prima facie case, in order for this Court to issue the writ, may be made by petition showing by an affidavit or other evidence probable cause to believe that a person is detained without lawful authority. However, this does not in any way warrant the release of a petitioner confined in the penitentiary. Such petitioner has the burden of proving by a preponderance of the evidence the allegations contained in his petition or affidavit which would warrant his release.

---

12. Of course, the important finality interest protected by *res judicata* is enhanced here as Mr. Richey is not incarcerated. *See United States v. Rankin,* 1 F.Supp.2d 445, 453 (E.D.Pa.1998) (" The interest in finality of judgments is a weighty one that may not be casually disregarded. Where sentences have been served, the finality concept is of an overriding nature, more so than in other forms of collateral review such as habeas corpus, where a continuance of confinement could be manifestly unjust.' " (citation omitted) (emphasis deleted)), *aff'd by unpublished disposition,* 185 F.3d 863 (3d Cir.1999).

13. We note that this discussion does not apply to Mr. Richey as we have already found that he is not entitled to relief. Nevertheless, we think this an appropriate time to discuss the issue of post-

conviction DNA testing requirements since it is an issue of great public concern and the bench, bar, and public would greatly benefit from our guidance. *See State v. Allah Jamaal W.,* 209 W.Va. 1, 4 n. 7, 543 S.E.2d 282, 285 n. 7 (2000) (addressing otherwise moot claims made by one who had been released from prison because the "issue [raised] is of great public and legal concern and should be addressed by this Court for guidance to trial courts."). *See also Hart v. NCAA,* 209 W.Va. 543, 549, 550 S.E.2d 79, 85 (2001) (per curiam) (addressing otherwise moot claims of college wrestler against rules prohibiting him from wrestling even though he graduated due to the importance of the issue to many college students and the importance we attach to education in West Virginia).

■ Placing the burden upon a petitioner seeking post-conviction DNA to plead and then to prove by a preponderance of the evidence his right to DNA testing is consistent with the view of other jurisdictions. *See, e.g.,* Mo. Rev. Stat. §§ 547.035(6) (2002) ("The movant shall have the burden of proving the allegations of the motion by a preponderance of the evidence."); N.M. Stat. Ann. § 31–1A–2(C) (Michie 2003 Cum. Supp.) ("The petitioner shall show, by a preponderance of the evidence . . . ."); Utah Code Ann. § 78–35a–301(6)(b) (2002 Repl. Vol.) ("[T]he court shall order DNA testing if it finds by a preponderance of the evidence that all criteria . . . have been met.").

■ Having set forth the evidentiary standard a petitioner seeking post-conviction DNA testing must meet, we turn to establishing what the petitioner must actually prove in order to prevail. We note initially that we have already observed that the general nature of habeas corpus, our own post-conviction habeas corpus statute, and the views of other jurisdictions establish that a post-conviction petitioner seeking DNA testing must be incarcerated. *See supra* Part III.A. note 7 and accompanying text and Part III.B note 12. We also find that a general requirement is that the petitioner prove the material he or she seeks to test exists and is available. *See, e.g.,* Ga. Code Ann. § 5–5–41(c)(7)(A) (2003 Supp.) ("The court shall grant the motion for DNA testing if it determines that . . . The evidence to be tested . . . is available[.]"); Mont. Code Ann. § 46–21–110(5)(a)(ii) ("The court shall grant the petition if it determines that the petition is not made for the purpose of delay and that . . . the evidence to be tested . . . is available[.]"); N.J. Stat. Ann. § 2A:84A–32a(d)(1) (West 2003 Cum. Ann. Pocket Part) ("The court shall not grant the motion for DNA testing unless, after conducting a hearing, it determines that . . . the evidence to be tested is available[.]").

Likewise, because a DNA test result is only useful if it is accurate, it is generally acknowledged that the petitioner must prove that the material to be tested is in a condition that would permit DNA testing. *See, e.g.,* Ga. Code Ann. § 5–5–41(c)(7)(A) ("The court shall grant the motion for DNA testing if it determines that . . . The evidence to be tested is . . . . in a condition that would permit the DNA testing requested in the motion[.]"); Mont. Code § 46–21–110(5)(a)(iii) ("The court shall grant the petition if it determines that . . . the evidence to be tested . . . is in a condition that would permit the requested testing[.]"); N.J. Stat. Ann. § 2A:84A–32a(d)(1) ("The court shall not grant the motion for DNA testing unless, after conducting a hearing, it determines that . . . the evidence to be tested is . . . in a condition that would permit the DNA testing that is requested in the motion[.]"); Ohio Rev. Code Ann. § 2953.74(C)(2)(c) (Anderson 2003 Repl. Vol.) ("If an eligible inmate submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if . . . The parent sample of the biological material so collected has not degraded or been contaminated to the extent that it has become scientifically unsuitable for testing, and the parent sample otherwise has been preserved, and remains, in a condition that is scientifically suitable for testing.").

A similar concern for accuracy undergirds the general requirement that a petitioner seeking post-conviction DNA testing prove a sufficient chain of custody of the material to be tested that establishes the material to be tested has not been substituted, tampered with, replaced, or altered in any material respect. *See, e.g.,* Ga. Code Ann. 5–5–41(c)(7)(B) ("The court shall grant the motion for DNA testing if . . . The evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect[.]"); Mont. Stat. Ann. § 46–21–110(5)(b) ("The court shall grant the petition if . . . the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, degraded, contaminated, altered, or replaced in any material aspect[.]"); 42 Pa. Cons. Stat. § 9543.1(d)(1)(ii) (2003 Cum. Ann. Pocket Part) ("[T]he court shall order the testing requested in a motion . . . after review of the record of the applicant's trial, that the . . . evidence to be tested has been subject to a

chain of custody sufficient to establish that it has not been altered in any material respect[.]") *See also* FIPA of 2003 § 3600(a)(4) ("[T]he court that entered the judgment of conviction shall order DNA testing of specific evidence if ... the specific evidence to be tested is in the possession of the Government and has been subject to a chain of custody and retained under conditions sufficient to ensure that such evidence has not been substituted, contaminated, tampered with, replaced, or altered in any respect material to the proposed DNA testing[.]") [14]

■ At this junction we must point out that meeting these requirements does not entitle a petitioner to post-conviction DNA testing. Courts and legislatures have recognized an additional critical element. We turn to that element now-the relevancy of DNA testing in a given case.

■ While DNA testing is a powerful tool it " 'is not a magic bullet in post-conviction cases.' " Jennifer Boemer, Note, *In the Interest of Justice: Granting Post–Conviction Deoxyribonucleic Acid (DNA) Testing to Inmates*, 27 Wm. Mitchell L. Rev. 1971, 1985 (2001) (quoting Chris Asplen, Executive Director of the National Commission on the Future of DNA Evidence). DNA " 'is only as powerful as it is relevant in a given scenario.' " *Id.* DNA testing is irrelevant when the issue in the case involves non-identity issues such as consent or intent. Keith A. Findley, *Learning from Our Mistakes: A Criminal Justice Commission to Study Wrongful Convictions*, 38 Cal. W.L. Rev. 333, 337 (2002) ("Moreover, biological evidence is useless where issues of consent or intent, rather than identity, are in dispute."). Indeed, many DNA testing statutes require identity to have been a significant issue at trial before testing is permitted. *See, e.g.,* Ga. Code Ann. § 5–5–41(c)(7)(E) ("The court shall grant the motion for DNA testing if it determines that ... The identity of the perpetrator of the crime was a significant issue in the case[.]"); N.J. Stat. Ann. § 2A:84A–32a(d)(3) ("The court shall not grant the motion for DNA testing unless ...

the identity of the defendant was a significant issue in the case[.]"). Ohio Rev. Code Ann. § 2953.74(C)(3) (permitting post-conviction DNA testing if, *inter alia,* "[t]he court determines that, at the trial stage in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing, the identity of the person who committed the offense was an issue."). *See also* FIPA § 3600(a)(7) (court that entered judgment of conviction shall order DNA testing, *inter alia,* "if the applicant was convicted following a trial, [and] the identity of the perpetrator was at issue in the trial[.]"). If the issue of identity of the perpetrator is not an issue or if DNA testing would not be "virtually dispositive" in establishing the petitioner's innocence then DNA testing is not warranted. *See, e.g., Jenner v. Dooley,* 590 N.W.2d 463, 472 (S.D.1999) (discussing the importance of identity as an issue in the case and, *inter alia,* that "the nature of the biological evidence makes testing results on the issue of identity virtually dispositive."); Ohio Rev. Code Ann. § 2953.74(C)(4) (post-conviction DNA testing may be allowed if "[t]he court determines that one or more of the defense theories asserted by the inmate at the trial stage in the case ... was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative."). In other words, DNA testing is warranted

> where the defendant claims he is "actually innocent" of the crime, and demonstrates that such testing shows that they [sic] did not commit the crime. DNA testing will not be permitted where such a test would only muddy the waters and be used by the defendant to fuel a new and frivolous series of appeals.

149 Cong. Rec. S12,294 (daily ed. Oct. 1, 2003) (statement of Sen. Hatch).

■ We also observe that post-conviction proceedings are not a venue for a petitioner to retry his case under different theories than those advanced at trial. *United States ex rel. Darcy v. Handy,* 97 F.Supp. 930, 939 (M.D.Pa.1951) (holding in a federal habeas case that "[h]aving taken the position

---

**14.** See supra note 7 for information about FIPA.

assumed at the trial, defendant cannot now properly ask to retry his case on a different theory."), *rev'd on other grounds,* 203 F.2d 407 (3d Cir.1953). Consistent with this, we also recognize that a petitioner may not request DNA testing if the theory supporting the testing contradicts the defenses raised at trial. *See, e.g.,* Ohio Rev.Code Ann. § 2953.74(C)(4) (post-conviction DNA testing allowed if "[t]he court determines that one or more of the defense theories asserted by the inmate at the trial stage in the case ... was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative."); Utah Code § 78–35a–301(2)(c) & (6)(b) (petitioner must show "a theory of defense, not inconsistent with theories previously asserted at trial, that the requested DNA testing would support"). *See also* FIPA § 3600(a)(6)(A) & (B) (DNA testing mandated, *inter alia,* if "the applicant identifies a theory of defense that—is not inconsistent with an affirmative defense presented at trial; and would establish the actual innocence of the applicant[.]") In circumstances where the petitioner seeking post-conviction DNA did not contest identity at trial,[15] the petitioner would not be entitled to post-conviction DNA testing. *See, e.g., Bell v. State,* 90 S.W.3d 301, 308 (Tex.Crim.App. 2002) (En Banc) (post-conviction DNA rule "requires that identity 'was or is' an issue, not that future DNA testing could raise the issue."); *Sanders v. State,* No. 01–00084–CR, 2004 WL 440426 (Tex.App. Mar. 11, 2004) (post-conviction DNA test denied as trial defense was that the attack never occurred and was fabricated by the victim).

We now find it would be beneficial to crystallize our conclusions here today and therefore so hold that before a petitioner is entitled to post-conviction DNA testing the petitioner must file a motion for post-conviction DNA testing in the circuit court that entered the judgment of conviction that the petitioner challenges. In the motion the petitioner must allege, and subsequently prove

by a preponderance of the evidence, that: 1) the petitioner is incarcerated; 2) the material upon which the petitioner seeks testing exists and is available; 3) the material to be tested is in a condition that would permit DNA; 4) a sufficient chain of custody of the material to be tested exists to establish such material has not been substituted, tampered with, replaced, or altered in any material respect; 5) identity was a significant issue at trial; and, 6) a DNA test result excluding the petitioner as being the genetic donator of the tested material would be outcome determinative in proving the petitioner not guilty of the offense(s) for which the petitioner was convicted. Finally, the petitioner's theory supporting the request for post-conviction DNA testing may not be inconsistent with the trial defenses. Of course, if the test result excludes the petitioner as being genetic donator of the tested material, the circuit court shall award appropriate relief.

We wish to further point out that motions for post-conviction DNA testing would fall under the definition of eligible proceeding under the West Virginia Public Defender Services Act. W. Va. Code § 29–21–2(2) (1996) (2001 Repl. Vol.). Therefore, we also hold that a petitioner bears the costs of post-conviction DNA testing unless the petitioner qualifies as an indigent, in which case the cost of testing shall be borne by the State. *See, e.g.,* Ga. Code Ann. § 5–5–41(c)(8) ("If the court orders testing pursuant to this subsection, the court shall determine the method of testing and responsibility for payment for the cost of testing, if necessary, and may require the petitioner to pay the costs of testing if the court determines that the petitioner has the ability to pay. If the petitioner is indigent, the cost shall be paid from the fine and forfeiture fund as provided in Article 3 of Chapter 5 of Title 15."); Mont. Code Ann. § 4621–110(11) ("The court shall order a petitioner who is able to do so to pay the costs of testing. If the petitioner is unable to pay, the court shall order the state to pay the costs of testing.").[16]

---

**15.** At oral argument before us, Mr. Richey's counsel confirmed that Mr. Richey's trial defense was not based on mistaken identity; rather, Mr. Richey's sole trial defense was based upon the

theory that the victim fabricated the story of the assault.

**16.** On March 13, 2004, the West Virginia Legislature passed H.B. 4156 (to be codified at Chapter

It is our hope that "[a]s DNA is used increasingly before conviction, the body of wrongful convictions that can be exposed through postconviction DNA testing will diminish, and ultimately disappear." Findley, *Learning from our Mistakes,* 38 Cal. West. L.Rev. at 337 (footnote omitted). *See also* 149 Cong. Rec. S12,294 (daily ed. Oct. 1, 2003) (statement of Sen. Hatch) ("DNA testing is now standard in pretrial criminal investigations today[.]"). For those who have been convicted but have not received pre-conviction DNA tests, we believe our opinion provides the appropriate guidelines for post-conviction testing.

In conclusion, we again reiterate that "the purpose of the legal system is to provide final resolution of legal controversies[.]" *Wellman v. Energy Resources, Inc.,* 210 W.Va. 200, 207, 557 S.E.2d 254, 261 (2001). Since 1979, Mr. Richey has filed numerous suits over his conviction.[17] However, "'[n]o effective judicial system can afford to concede the continuing theoretical possibility that there is error in every trial.'" *State v. Lo,* 264 Wis.2d 1, 38, 665 N.W.2d 756, 774 (2003) (citation omitted). We have thus found no one is "entitled to appeal upon appeal, attack upon attack, and *habeas corpus* upon *habeas corpus.*" *Call v. McKenzie,* 159 W.Va. 191, 194, 220 S.E.2d 665, 669 (1975). *Accord United States v. Quinones,* 313 F.3d 49, 62 (2d Cir.2002) (finding no fundamental right to "the continued opportunity to exonerate oneself throughout the natural course of one's life[.]"), *cert. denied,* 540 U.S. 1051, 124 S.Ct. 807, 157 L.Ed.2d 702 (2003). Having thoroughly considered the merits of his claims, we agree that litigation must end sometime and "[t]hat time has come for Mr. [Richey]." *United States v. Keane,* 852 F.2d 199, 206 (7th Cir.1988).

15, Article 2B of the West Virginia Code) concerning post-conviction DNA testing. This statute is effective ninety days from date of passage. Therefore, our opinion herein controls those post-conviction DNA requests filed before the effective date of H.B. 4156. Requests made after June 11, 2004, will be governed by H.B. 4156.

17. Mr. Richey has not limited his filings to state court. In 1996, the federal district court dismissed a complaint Mr. Richey filed against the State of West Virginia and the West Virginia State Police as frivolous under 28 U.S.C.

## IV.

## CONCLUSION

For the foregoing reasons, the petition for a writ of mandamus is denied.

Writ denied.

Justice STARCHER, deeming himself disqualified, did not participate in the decision of this case.

Judge PAUL ZAKAIB, Jr., sitting by temporary assignment.

Justice ALBRIGHT dissents and files a dissenting opinion.

Chief Justice MAYNARD concurs and files a concurring opinion.

ALBRIGHT, Justice, dissenting.

I dissent because, having improvidently decided the instant case on the narrow ground of *res judicata,* the majority has proceeded to unnecessarily "make law." If followed, that unnecessary decisional law would improperly limit the power of this Court to address post-conviction criminal cases in which presently known or hereafter developed DNA technology might support reversal of unjust convictions.

### Finality

In its fervor to provide guidance to the lower courts regarding post-conviction DNA testing requests,[1] the majority addressed issues not squarely before this Court, issues which also have not been fully addressed by the parties. The majority undertakes to answer the broad question of which courts should consider what factors in what cases when faced with motions for post-conviction

§ 1915(d), and in 1999 the federal court dismissed Mr. Richey's suit against Judge Scott over his *coram nobis* as frivolous under 28 U.S.C. § 1915(e)(2)(D).

1. The urgency for using this case to decide the issue is unclear since the lower courts have been faced with these requests for nearly ten years as a consequence of *Zain I. In the Matter of the Investigation of West Virginia State Police Crime Laboratory, Serology Div.,* 190 W.Va. 321, 438 S.E.2d 501 (1993).

DNA testing. I find the result of this misadventure to be immoderately narrow tests for relief and artificial and improvident foreclosure of effective application of the rapidly evolving technology of DNA testing. Beyond lack of foresight, I fear the factors enunciated by the majority will result in misunderstandings and thus, divergent results, all for the misplaced purpose of promoting finality of criminal convictions and judgments.

"The strong presumption that verdicts are correct, one of the underpinnings of restrictions on postconviction relief, has been weakened by the growing number of convictions that have been vacated because of exclusionary DNA results." National Commission on the Future of DNA Evidence, National Institute of Justice, *Postconviction DNA Testing: Recommendation for Handling Requests,* www.ncjrs.org/txtfiles1/nij/177626.txt (1999).[2] It is axiomatic that exclusionary DNA results will lead to challenges to the finality of related convictions and judgments. The majority's blind adherence to conventional notions of finality fails to acknowledge the unique potential DNA testing currently and potentially has for determining the ultimate question of guilt or innocence, fails to credit the nationwide reality that such tests—as far as the technology has thus far progressed—have corrected miscarriages of justice in a substantial number of cases, and fails to appreciate that a request for such testing is a mere "first step." A request for DNA testing is, by its nature, only a preliminary step to determining whether there is even a basis to petition for post-conviction relief. In the instant case, the request is even less a cause of concern because it does not involve the extraction of a DNA sample from anyone but the Petitioner or from any object other than items supposedly in the possession of the State or its agencies. At the time Petitioner was convicted, DNA testing was not available[3] as a means of supporting or refuting Petitioner's contention that no crime had been committed. Petitioner and those similarly situated should not be deprived the benefit of the testing due to ill-suited orthodox notions of finality. As Justice Brennan stated in *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), the "[c]onventional notions of finality of litigation have no place where life or liberty is at stake . . . ." *Id.* at 8, 83 S.Ct. 1068. To reiterate, the testing itself simply determines what further action *may* be warranted. Thus, the consequence of granting DNA testing requests in relevant cases is aimed at identification of individuals who have been wrongly convicted so that justice results. In those circumstances ought not justice prevail over finality?

### Incarceration

A good example of the improvidence of the rules for DNA testing set forth by the majority is the requirement that the Petitioner be incarcerated, supported by citation to a laundry list of statutes that require incarceration for *an action at law* to compel DNA testing. The instant case is a petition for relief *where there is no adequate remedy at law.* Would the majority have us believe that a citizen believing himself or herself wrongly convicted has no legitimate interest in overturning that conviction after release from prison? Or while on probation? Or on home confinement? That may be good statutory law in several states. It hardly suits the ends of justice.[4] Rather, the limitation suggests it-

---

**2.** The National Commission on the Future of DNA Evidence was established in the late 1990's by then Attorney General Janet Reno in response to documentation of erroneous convictions. The Commission consists of five working groups. The members of the Working Group on Postconviction Issues which developed the cited document included two defense counsel and two prosecutors, a judge, a victims' rights advocate, a scientist, and academics having experience with various issues relating to the forensic use of DNA. The report of this group regarding recommendations for the handling of post-conviction requests for DNA testing include suggestions for all segments of the criminal justice system, in-

cluding the judiciary, and warrants further study by the bench and bar of this state.

**3.** The first use of DNA technology in an American criminal trial occurred in *Andrews v. State,* 533 So.2d 841 (Fla.Dist.Ct.App.1988). Daryl E. Harris, *By Any Means Necessary: Evaluating the Effectiveness of Texas' DNA Testing Law in the Adjudication of Free–Standing Claims of Actual Innocence,* 6 Scholar 121, 138 (2003).

**4.** The majority opinion correctly points out that as the use of DNA testing in crime investigation grows, the number of post-conviction DNA test requests may well decrease because appropriate

self to be a bureaucratic tool to avoid granting appropriate DNA testing in all instances meriting such testing.

If it be the intent of the majority to completely bar persons unjustly convicted of crimes from ever utilizing DNA technology to regain their good names and reputations in the community simply because those persons have been released from prison or had the better fortune of undergoing probation, parole, home incarceration or community service for crimes of which they are innocent, I submit that intent must fail, the majority opinion in this case notwithstanding. There can be no sound reason for making a distinction on the basis of how a sentence is served or whether it has been fully served, since it hardly promotes the overriding aim of our criminal justice system: "that guilt shall not escape or innocence suffer." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

### Requiring Application To Circuit Courts

Simply put, the requirement manufactured by the majority that applications for postconviction DNA testing *must* be initiated in the circuit courts is an inappropriate intrusion into the constitutional jurisdiction of this Court to grant extraordinary relief in any appropriate case[5] where the remedy at law

is inadequate and the common-law requirements for a given writ are met by a petitioner. While the contents of syllabus point six of the majority opinion[6] could conceivably form the basis for a circuit court rule of practice and procedure to be promulgated by this Court after adequate public comment, its promulgation by way of decisional law is both inappropriate and ill-advised. In a similar vein, the majority opinion suggests that the Legislature's recent enactment of Enrolled Committee Substitute for House Bill 4156 (Reg. Sess. 2004) binds the manner in which courts handle DNA testing requests after its effective date and vindicates the majority's procedural limitations on applications for DNA testing. That statute does indeed establish a statutory right to DNA testing. It does not effect a limitation on the constitutional authority of this Court. Neither the majority's decision nor Enrolled Committee Substitute for House Bill 4156 should be permitted to bar from this Court any meritorious application to it for relief by way of an extraordinary writ within our constitutional jurisdiction.

### Limiting the Tests of "Identity"

As to the requirement that identity must have been a significant issue at trial, I am dismayed by the majority's impliedly restric-

---

tests will be performed before trial in a significant number of cases. This is no solace to a person wrongfully convicted before such testing has become commonplace. Nor is it solace to the Petitioner, whose prior prayers for post conviction relief have been, at every turn, given short shrift by the Circuit Court of Kanawha County and this Court, despite the substantial involvement of Fred Zain in the Petitioner's conviction.

5. *See* W.Va. Const. art. VIII, § 3 ("The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and certiorari."); *see also* Syl. Pt. 10, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)("The Supreme Court of Appeals has original jurisdiction in cases of habeas corpus, mandamus and prohibition and appellate jurisdiction in all other cases mentioned in Article VIII, Section 3, of the Constitution of this State *and in such additional cases* as may be prescribed by law ....") (emphasis added).

6. Syllabus point six of the majority opinion reads:

Before a petitioner is entitled to post-conviction DNA testing the petitioner must file a motion for post-conviction DNA testing in the circuit court that entered the judgment of conviction that the petitioner challenges. In the motion the petitioner must allege, and subsequently prove by a preponderance of the evidence, that: 1) the petitioner is incarcerated; 2) the material upon which the petitioner seeks testing exists and is available; 3) the material to be tested is in a condition that would permit DNA [testing]; 4) a sufficient chain of custody of the material to be tested exists to establish such material has not been substituted, tampered with, replaced, or altered in any material respect; 5) identity was a significant issue at trial; and 6) a DNA test result excluding the petitioner as being the genetic donator of the tested material would be outcome determinative in proving the petitioner not guilty of the offense(s) for which the petitioner was convicted. Finally, the petitioner's theory supporting the request for post-conviction DNA testing may not be inconsistent with the trial defenses.

tive definition of identity as evidenced by its observation in footnote fifteen.[7] From this note, it appears that "mistaken identity" must have been asserted as a defense at trial in order to have a request for DNA testing granted. This is patently absurd as the instant case readily demonstrates. Petitioner claimed that no crime was committed, in effect arguing that the prosecution and resultant conviction of *anyone*, including Petitioner, should not have occurred. If DNA testing would show that the sperm on the underwear of the alleged victim was that of anyone other than Petitioner, including the alleged victim, it might be shown to the satisfaction of a reviewing court that the wrong person was *identified* as a perpetrator and convicted. Identity in this context—that no crime was committed—was certainly at issue in the present case despite the fact that a defense of mistaken identity of the accused was not.

### A Framework For Evaluating Applications For DNA Testing

Notwithstanding my strong disagreements with the dismissal of this case on the basis of *res judicata* and the overly broad terms of the majority opinion, I must evidence sympathy with the view that the Petitioner here did not bring us a clear picture of how the tests, if conducted, might have justified relief from the Petitioner's conviction. That clear picture, frankly, did not appear from the briefs or from the oral argument, in part because the clothing involved apparently was not introduced into evidence in the case.

Despite these deficiencies, I see absolutely no logical reason or other justification to support the majority's position that individuals *initially applying* for DNA testing bear the burden of proving factors which are beyond their knowledge and outside their possession. It is most unreasonable at this *preliminary stage* to expect persons who are least likely, especially if they are incarcerat-

ed or similarly incapacitated, to have access to the information to prove that the material to be tested exists and is available for testing, is in a condition which would permit DNA testing, and has a chain of custody which demonstrates the material has not been altered or otherwise tainted. Proof of these factors *may* at times be helpful in processing the request, but it seems more likely that some of this desired information will actually emerge from the testing process itself. To the extent such information is needed at this initial stage, a practical suggestion made by one authority[8] is that it be derived from the cooperative efforts of the state and the convicted person's counsel. This seems to be an even-handed and fair approach at the application stage and would do nothing to disturb the established burden of proof if an attack on the judgment of conviction is later mounted by a convicted person. The convicted person making the attack would then bear the burden of proving the elements necessary to support the requested relief.

Moreover, the neat little rule that the petitioner's theory supporting a request for post-conviction DNA testing may not be inconsistent with the trial defenses is in many factual circumstances quite reasonable and appropriate. I see no reason, however, to exclude the possibility that a factual situation might arise—beyond the imagination of the majority to conceive—where that rule, set in stone, would work a horrible injustice. The facts of the case before us not requiring a ruling on the point, I dissent from the enunciation of that rule by reason of lack of knowledge of what might arise and by reason of awe for the unknown future. This Justice does not want our courts put in a box of unknown possibilities.

All of that being said, it seems to me indispensable that one applying to this Court, or under the majority's preferred route, to a circuit court, for DNA testing in a post-

---

7. The text of footnote fifteen of the majority opinion reads: "At oral argument before us, Mr. Richey's counsel confirmed that Mr. Richey's trial defense was not based on mistaken identity, rather, Mr. Richey's sole trial defense was based upon the theory that the victim fabricated the story of the assault."

8. *See* National Commission on the Future of DNA Evidence Report, supra, Chapter 6: Recommendations for the Judiciary in Handling Initial Requests [for DNA Testing].

conviction situation *must* present a convincing and practical scenario under which, if the requested tests were to be performed and the results found favorable to the applicant, a legally sound motion might justify disturbing the finality of the conviction. For instance, from the showings made in this case, it seems eminently fair to insist that the Petitioner should be required to demonstrate that favorable test results, if available, would be, in the words of the majority opinion, "outcome determinative." I would suggest that without such a showing or very good cause for the absence of such a showing, it is highly unlikely that any court would be persuaded to order such tests.

### Summary

As I find the majority's solution of forcing the round peg of DNA testing into the square hole of traditional post-conviction remedies to be unduly restrictive and founded on factors not before us and largely unknown to us, I respectfully dissent.

MAYNARD, Chief Justice, concurring.

(Filed July 6, 2004)

I write separately to concur with the majority in this case and to express particular concern with the tension between the need for fairness and the expenditure of limited judicial resources. I have always sought to make decisions which are fair, faithful to the precedents of this Court, and respectful to the views of other jurisdictions. Having read the very scholarly dissenting opinion, I believe that it is too motivated by what it perceives are legitimate concerns about the fairness, justness, and equity of the majority opinion. I believe the dissenting opinion is off the mark in its concern. Thus, I fully join the majority opinion but write separately to more fully explain why the opinion is fair, just, equitable, consistent with West Virginia law, and is consistent with the majority view of the law in numerous other jurisdictions.

### A. General Rules of Criminal Finality

First, the dissent expresses substantial concern that " '[c]onventional notions of final-

ity of litigation have no place where life or liberty is at stake ....' *Sanders v. United States,* .373 U.S. 1, 8, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)." However, "[w]ithout finality, the criminal law is deprived of much of its deterrent effect. The fact that life and liberty are at stake in criminal prosecutions 'shows only that the "conventional notions of finality" should not have *as much* place in criminal as in civil litigation, not that they should have none.' " *Teague v. Lane,* 489 U.S. 288, 309, 109 S.Ct. 1060, 1074–75, 103 L.Ed.2d 334 (1989) (plurality opinion) (quoting Hon. Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attacks on Criminal Judgments,* 38 U. Chi. L.Rev. 142, 150 (1970)).[1] *Accord State v. Mata,* 185 Ariz. 319, 916 P.2d 1035, 1053 (1996) (En Banc); *People v. Smith,* 341 Ill.App.3d 530, 276 Ill. Dec. 472, 794 N.E.2d 367, 377 (2003); *State v. Whitfield,* 107 S.W.3d 253, 281 (Mo.2003) (En Banc) (Limbaugh, C.J., dissenting) (rule applies at both "the state or federal level ...."). In fact, the West Virginia Post–Conviction Habeas Corpus Act, W.Va.Code § 53–4A–1(a) (2000) provides for the application of res judicata in post-conviction proceedings, a point which this Court has recognized:

A judgment denying relief in post-conviction habeas corpus is res judicata on questions of fact or law which have been fully and finally litigated and decided, and as to issues which with reasonable diligence should have been known but were not raised, and this occurs where there has been an omnibus habeas corpus hearing at which the applicant for habeas corpus was represented by counsel or appeared pro se having knowingly and intelligently waived his right to counsel.

Syllabus Point 2, *Losh v. McKenzie,* 166 W.Va. 762, 277 S.E.2d 606 (1981). *See also State ex rel. Strogen v. Trent,* 196 W.Va. 148, 150 n. 1, 469 S.E.2d 7, 9 n. 1 (1996) (per curiam) (refusing to apply W.Va.Code § 53–4A–1(a) to an original jurisdiction habeas petition only because the State did not raise the issue of res judicata).

---

**1.** Judge Friendly's observation adopted in *Teague* was, of course, a retort to Justice Brennan's opinion in *Sanders. See* Kent S. Scheidegger,

*Habeas Corpus, Relitigation, and the Legislative Power,* 98 Columbia L. Rev. 888, 936 n. 342 (1998).

Of course, there are additional reasons compelling an adherence to finality in the post-conviction arena. "[C]ollateral litigation places a heavy burden on scarce ... judicial resources, and threatens the capacity of the system to resolve primary disputes." *McCleskey v. Zant,* 499 U.S. 467, 491, 111 S.Ct. 1454, 1469, 113 L.Ed.2d 517 (1991). In other words, "[t]o the extent the ... courts are required to re-examine claims on collateral attack, they deprive primary litigants of their prompt availability and mature reflection. After all, the resources of our system are finite: their overextension jeopardizes the care and quality essential to fair adjudication." *Schneckloth v. Bustamonte,* 412 U.S. 218, 260–61, 93 S.Ct. 2041, 2065, 36 L.Ed.2d 854 (1973) (footnote omitted) (Powell, J., concurring). "The reopening of closed cases ... means attention to bygones at the expense of others in need of initial adjudication." *United States v. Keane,* 852 F.2d 199, 206 (7th Cir.1988). Every petitioner who seeks successive post-conviction proceedings denies access to the courts of criminal defendants seeking speedy trials, civil plaintiffs seeking compensation for injuries, abused and neglected children seeking protection, and so on. The chronology in this case shows why the doctrine of res judicata bars, and should bar, Mr. Richey's claim. Mr. Richey has to date lost: 1) his *Zain* habeas in front of Judge MacQueen; 2) his motion for DNA testing in front of Judge Scott; 3) another motion for DNA testing in front of Judge Bloom that raised no new issues; and, 4) an original jurisdiction habeas for DNA testing which this Court refused. He is now again asking for post-conviction DNA testing. Mr. Richey doesn't simply want another

bite at the apple; he wants the whole orchard.[2] Which leads to my next point.

Even those who have been convicted have an interest in the finality of their convictions. "As Justice Harlan once observed, '... the individual criminal defendant ... ha[s] an interest in insuring that there will at some point be the certainty that comes with an end to litigation, and that attention will ultimately be focused not on whether a conviction was free from error but rather on whether the prisoner can be restored to a useful place in the community.'"

*Coleman v. Thompson,* 501 U.S. 722, 748, 111 S.Ct. 2546, 2564, 115 L.Ed.2d 640 (1991) (quoting *Engle v. Isaac,* 456 U.S. 107, 127, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783 (1982)) (quoting *Sanders v. United States,* 373 U.S. 1, 24–25, 83 S.Ct. 1068, 1082, 10 L.Ed.2d 148 (1963) (Harlan, J., dissenting)). That is to say,

At some point the law must convey to those in custody that a wrong has been committed, that consequent punishment has been imposed, that one should no longer look back with the view to resurrecting every imaginable basis for further litigation but rather should look forward to rehabilitation and to becoming a constructive citizen.

*Schneckloth,* 412 U.S. at 262, 93 S.Ct. at 2065, 36 L.Ed.2d 854 (Powell, J., concurring). Consequently, I must agree that:

"A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the effectiveness of underlying substantive commands ... There comes a point where a procedural system which leaves matters

---

**2.** The dissent posits that if DNA testing on the underwear showed that the semen matched neither Mr. Richey nor his victim then it "might be shown to the satisfaction of a reviewing court that the wrong person was identified as a perpetrator and convicted." (emphasis deleted). Aside from noting that "might" is a long way from what the dissent agrees is the proper test, i.e., the test results must be "outcome determinative," it also points out another problem. The dissent claims that Mr. Richey's request for DNA testing "is even less a cause of concern because it does not involve the extraction of a DNA sample from anyone but the Petitioner ...." However, even if Mr. Richey's DNA did not match the semen on

the underwear, this would not be outcome determinative because the victim testified that during the attack Mr. Richey masturbated him and caused him to ejaculate. Consequently, unless Mr. Richey can show that the semen on the underwear did not match *either* Mr. Richey or the victim, the testing is not outcome determinative since the test result would not be inconsistent with guilt. That of course means that the victim must also provide a DNA sample, which means that for the post-conviction DNA testing to be worthwhile the DNA testing would have to involve someone other than Mr. Richey-namely the victim of a crime that occurred nearly twenty-five years ago.

perpetually open no longer reflects humane concern but merely anxiety and a desire for immobility."

*McCleskey*, 499 U.S. at 492, 111 S.Ct. at 1469 (citation omitted). *See also Miller v. Bordenkircher*, 764 F.2d 245, 249 (4th Cir. 1985)("To speak thus firmly on the matter is not to speak harshly. At some point, the system must declare that justice has been done insofar as human capacity exists to dispense it, and attempt to focus the attention of those it has incarcerated upon rehabilitation rather than relitigation."). All of which is not to say that there are not some extremely limited instances where the rules of finality must imperatively yield. Therefore, I now turn to the dissent's next issue-that of making post-conviction DNA testing dependent upon a petitioner being incarcerated.

## B. The Incarceration Requirement

The dissent states that "[t]here can be no sound reason for making a distinction on the basis of how a sentence is served or whether it has been fully served, since it hardly promotes the overriding aim of our criminal justice system: 'that guilt shall not escape or innocence suffer.' *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)." [3] I believe that there are a number of good reasons to require current incarceration as a predicate to requesting post-conviction DNA relief.

The requirement that a post-conviction DNA petitioner be incarcerated is the standard applied to ordinary petitioners by the West Virginia Habeas Corpus Act; it is the standard applied by H.B. 4156; it is the standard that has been applied by numerous other jurisdictions; it is the standard enunciated in the pending Federal Innocence Protection Act; and it is the standard articulated by the seminal academic articles on the subject.[4] Aside from West Virginia law and my very strong and firm belief that this Court owes a healthy amount of respect to the actions of the Legislature in determining issues of public policy, the non-West Virginia authority alone would be a sufficiently compelling reason justifying a requirement that one be currently incarcerated before being allowed to seek post-conviction DNA testing. *Dailey v. Board of Review*, 214 W.Va. 419, 433, 589 S.E.2d 797, 811 (2003) (Albright, J.) (Starcher, C.J., concurring) ("The majority opinion, in superb detail, sets forth the definitions of the two terms used by other states, and uses the law of those other states to craft definitions for use in West Virginia.")

Further, we have recognized that it is "often the case in our vocation ... to craft a working rule that reflects a delicate balance between two competing interests." *State ex rel. Roark v. Casey*, 169 W.Va. 280, 284, 286 S.E.2d 702, 705 (1982). While released inmates who may be innocent have a personal interest in their "good names and reputations,"[5] those inmates who are innocent and still in prison have an even stronger interest-*gaining their freedom*. We must face the reality that the judicial system has limited resources. "[W]e live in a world of scarcity,

---

**3.** I do want to point out that *Berger* dealt with the duty of a prosecutor to deal fairly with a criminal defendant during a criminal trial; *Berger* was not a post-conviction proceeding. Perhaps applying the broad language of *Berger* here, is, to take a line from the dissent itself, "forcing a round peg ... into a square hole[.]" Indeed, since 1963 the Supreme Court has "taken care in [its] habeas corpus decisions to reconfirm the importance of finality." *McCleskey*, 499 U.S. at 491, 111 S.Ct. at 1468.

**4.** *See, e.g.*, Friendly, *Is Innocence Irrelevant?*, 38 U. Chi. L. Rev. at 150 (citation omitted) (emphasis added) (" '[t]he policy against *incarcerating* ... an innocent man ... should far outweigh the desired termination of litigation.' ") *See also id.* (emphasis added) (agreeing that rules of finality should be relaxed "when there is some question of an innocent man *languishing in prison*[.]").

**5.** Although such interest does not itself rise to the level of constitutional right nor does it justify post-conviction relief for the reasons I set forth above. *Cf. Carey v. Dostert*, 185 W.Va. 247, 255, 406 S.E.2d 678, 686 (1991) ("[D]efamation does not constitute a deprivation of a 'liberty' or 'property' interest protected by the fourteenth amendment. *Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976)."); *United States v. Rankin*, 1 F.Supp.2d 445, 455 (E.D.Pa.1998) (citation omitted) ("Rankin's objection to being labeled a criminal as a result of his convictions in this case does not justify *coram nobis* relief. As the court of appeals observed, '[d]amage to reputation is not enough.' "), *aff'd by unpublished opinion*, 185 F.3d 863 (3d Cir. 1999) (Table); *United States v. Kerner*, 895 F.2d 1159, 1161 (7th Cir.1990) (similar); *Blanton v. United States*, 896 F.Supp. 1451, 1457 (M.D.Tenn.1995) (similar), *aff'd*, 94 F.3d 227 (6th Cir.1996).

one in which that most inflexible commodity, time itself, sets a limit on our ability to prevent and correct mistakes." *United States v. Keane,* 852 F.2d 199, 206 (7th Cir. 1988). We have a system that seeks to minimize mistakes through procedural mechanisms such as a trial by jury with all its attendant protections (right to effective counsel, proof beyond a reasonable doubt, disclosure of exculpatory evidence, rules based right to reciprocal discovery, etc.), a right to petition to this Court for appeal from any conviction, the right to file a petition for a writ certiorari with the Supreme Court of the United States from the decision of this Court, the right to file a post-conviction habeas corpus in state court under W. Va.Code § 53–4A–1, a right to appeal a state habeas denial to this Court with the right to file a petition for a writ certiorari with the Supreme Court of the United States from the decision of this Court, then a right to file for a habeas corpus in federal court under 28 U.S.C. § 2254 to vacate a state conviction violating the federal constitution, a right to appeal a denial of the federal habeas to a federal circuit court of appeal, and then the right to file a petition for certiorari to the Supreme Court of the United States from the decision of the federal appellate court.

The resources that support these proceedings, however, are not infinite. Thus, we must prioritize and apply the justice system's finite resources to mitigating the greatest harms being caused from convicting a person who is actually innocent. Consequently, " [w]here sentences have been served, the finality concept is of an overriding nature, more so than in other forms of collateral review such as habeas corpus, where a continuance of confinement could be manifestly unjust.' " *Fleming v. United States,* 146 F.3d 88, 91 n. 3 (2d Cir.1998) (quoting *United States v. Osser,* 864 F.2d 1056, 1059 (3d Cir.1988)).

While I am "acutely conscious ... that [Mr. Richey] must bear the emotional weight and public obloquy of conviction," *Keane,* 852 F.2d at 206,[6] the interest of those still incarcerated in being released from the "restrictive and even harsh" conditions of imprisonment that attend incarceration clearly must be our first priority.[7] "At some point the judicial system must close old files and turn to the future, regretfully accepting the risk of error lest the quest for perfect justice become the enemy of adequate justice." *Keane,* 852 F.2d at 206. All of these factors are "sound reason[s] for making a distinction on the basis of how a sentence is served or whether it has been fully served" in deciding whether to permit post-conviction DNA testing.

### C. Post–Conviction DNA testing and Constitutional Jurisdiction

Finally, I want to defend the majority opinion from the claims that its directive that a petitioner must seek post-conviction testing from the court that entered the conviction, which is the same requirement imposed by H.B. 4156, is somehow an unconstitutional infringement on the original jurisdiction of this Court. I note that the dissent cites no specific authority for its conclusion that requiring a petitioner to seek post-conviction DNA testing from the court of conviction is an "inappropriate intrusion into the constitutional jurisdiction of this Court to grant extraordinary relief in any appropriate case where the remedy at law is inadequate and the common-law requirements are met by a petitioner." [8] Indeed, decisional law from this Court appears to refute the dissent's position for we have previously recognized that W. Va.Code § 53–4A–1's statutory limitation barring successive habeas petitioner's applied to this Court's original jurisdiction. *State ex rel. Strogen v. Trent,* 196 W.Va. 148,

---

6. *But see* note 5, *supra* (observing that reputational injury alone is not a constitutional violation or a ground justifying post-conviction relief).

7. *See Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) ("To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.").

8. I also want to point out that we have long held that mandamus does not lie if there exists an adequate remedy at law. *See, e.g., Smith v. State Road Comm'n,* 110 W.Va. 296, 299, 158 S.E. 163, 164 (1931) ("[Mandamus] is not available ... where another specific and adequate remedy exists, since the office of mandamus is not to supersede, but rather to supply the want of a legal remedy.") Thus, "[a] remedy given by statute, which is as speedy and equally efficacious as

150 n. 1, 469 S.E.2d 7, 9 n. 1 (1996) (per curiam) (refusing to apply W.Va.Code § 53–4A–1(a) to an original jurisdiction habeas petition only because the State did not raise the issue of res judicata).

Moreover, requiring post-conviction DNA petitioners to seek relief from the court of conviction is eminently justifiable since the "[l]aw is practical and that is the practical approach." *State ex rel. Shorter v. Hey,* 170 W.Va. 249, 258, 294 S.E.2d 51, 60 (1981) (Neely, J., concurring). The court of conviction is the court that has control over the circuit clerk who is responsible for the record in the case. Likewise, the circuit court presumably should have access to the record containing the material the petitioner wants tested. In point of fact, DNA testing is necessarily going to involve factual questions and we have observed that "[g]enerally, we decline to exercise original jurisdiction in cases involving merely factual disputes." *State ex rel. Suriano v. Gaughan,* 198 W.Va. 339, 345, 480 S.E.2d 548, 554 (1996). In short, " '[t]he exercise of our original jurisdiction is discretionary and is governed by the practical circumstances of the case.' " *State ex rel. McGraw v. Telecheck* 213 W.Va. 438, 443 n. 3, 582 S.E.2d 885, 890 n. 3 (2003) (quoting *State ex rel. Doe v. Troisi,* 194 W.Va. 28, 32, 459 S.E.2d 139, 143 (1995)). In declining to exercise our original jurisdiction and directing petitioners "to a more appropriate court...we are exercising the discretion granted to us by the [state] Constitution." *Harvard v. Singletary,* 733 So.2d 1020, 1021 (Fla.1999) (per curiam). *Cf.* W. Va. R.App. P. 14(c) ("If the Supreme Court determines not to issue a rule to show cause, such determination shall be without prejudice to the right of the petitioner to present a petition to a lower court having proper jurisdiction, unless the Supreme Court specifically notes in the order denying a rule to show cause, that the denial is with prejudice.")

mandamus, excludes the latter remedy." Syl. pt. 2, *Doran v. Whyte,* 75 W.Va. 368, 83 S.E. 1025 (1914). Consequently, the dissent's view that "[n]either the majority's decision nor Enrolled Committee Substitute for House Bill 4156 should be permitted to bar from this Court any meritorious application to it for relief by way of an extraordinary writ within our constitutional jurisdiction[,]" is a dramatic and drastic reinterpretation of our law related to mandamus.

Finally, aside from everything else, however, I also do not understand the necessity for this Court to exercise its original jurisdiction in post-conviction DNA cases. Neither the majority opinion nor H.B. 4156 excludes this Court from participation in such cases. We can, of course, in appropriate cases, review the decisions of the circuit courts by way of a petition for appeal.[9] I have unbounded great confidence in the circuit court judges in this State. I believe that they can be trusted to apply either the majority opinion or H.B. 4156 as appropriate.

Having set forth why the majority and H.B. 4156 are fair, just, and equitable, I fully concur with the majority opinion.

9. And, of course, we can always exercise our original jurisdiction to issue writs of mandamus or other appropriate writs if, for example, the court of conviction does not act reasonably promptly on the post-conviction DNA testing petition.